```
 1    UNITED STATES DISTRICT COURT
      EASTERN DISTRICT OF NEW YORK
 2    --------------------------------x
                                          16-CV-3498 (CBA)
 3    U.S. LIABILITY INSURANCE COMPANY,
                                          United States Courthouse
 4              Plaintiff,                Brooklyn, New York

 5              -against-                 February 6, 2019
                                          2:00 p.m.
 6    WW TRADING CO., INC., ET AL.,

 7              Defendants.
      --------------------------------x
 8
                  TRANSCRIPT OF CIVIL CAUSE FOR ORAL ARGUMENT
 9                  BEFORE THE HONORABLE CAROL B. AMON
                      UNITED STATES DISTRICT JUDGE
10

11    APPEARANCES:

12    Attorney for Plaintiff:  MIRANDA SAMBURSKY SLONE SKLARIN
                               VERVENIOTIS LLP
13                             240 Mineola Boulevard
                               Mineola, New York 11501
14                             BY:  STEVEN VERVENIOTIS, ESQ.

15
                               W&T SEAFOOD CORP. AND WONG TUNG, LLC
16    Attorney for Defendant:  RIVKIN RADLER LLP
                               926 RXR Plaza
17                             Uniondale, New York 11556
                               BY:  ALAN C. EAGLE, ESQ.
18

19    Attorney for Defendant:  WW TRADING CO., INC.
                               CATAFAGO FINI LLP
20                             350 Fifth Avenue, Suite 7710
                               New York, New York 10118
21                             BY:  TOM M. FINI, ESQ.

22    Court Reporter:          Georgette K. Betts, RPR, FCRR, CCR
                               Phone:  (718)804-2777
23                             Fax:    (718)804-2795
                               Email:  Georgetteb25@gmail.com
24
      Proceedings recorded by mechanical stenography.  Transcript
25    produced by computer-aided transcription.
```

*GEORGETTE K. BETTS, RPR, FCRR, CCR*
*Official Court Reporter*

1    THE LAW CLERK:  All rise.  Case number 16-CV-3498.

2  U.S. Liabilities Insurance versus WW Trading Company on for

3  oral argument.

4    THE COURT:  All right.  The parties want to state

5  their appearances, please.

6    MR. VERVENIOTIS:  Good afternoon, Your Honor, I'm

7  Steven Verveniotis for the plaintiff, United States Liability

8  Insurance Company.

9    THE COURT:  Good afternoon.

10    MR. EAGLE:  Good afternoon, Your Honor, Alan Eagle

11  with Rivkin Radler.  We represent defendants, W&T and Wong

12  Tung.

13    MR. FINI:  Good afternoon, Your Honor.  Tom Fini of

14  Catafago Fini LLP representing defendant, WW Trading Company

15  Incorporated.

16    THE COURT:  Good afternoon.

17    MR. FINI:  Good afternoon.

18    THE COURT:  You just want to be heard briefly,

19  counsel, on your application for reconsideration?

20    MR. VERVENIOTIS:  Yes, Your Honor.

21    THE COURT:  I understand it's based on two things

22  that you believe that I didn't address.  One of your

23  arguments, which was that painting itself was renovation and

24  then you contend there is a new case, *American Empire*, which

25  is a summary order I guess from the Second Circuit which

1  suggests that the circuit has a different view of the issue I

2  addressed than the First Circuit.  Is that essentially it?

3          MR. VERVENIOTIS:  That's essentially it, Your Honor.

4          THE COURT:  You want to be heard any further on

5  that?

6          MR. VERVENIOTIS:  The only thing I'd like to

7  embellish on top of that is, there was a full record, as Your

8  Honor knows, on the motion practice as to everything that

9  occurred, extensive deposition transcripts.  In the meanwhile,

10  we've submitted a pretrial order --

11          THE COURT:  Right, I have that.

12          MR. VERVENIOTIS:  -- and the case is to be tried

13  before Your Honor.  I think rather than having a trial in this

14  case, it really is a legal definition that Your Honor needs to

15  apply the law.  And I'm asking Your Honor, especially in the

16  context that this is a bench trial case and all of the people

17  who would testify, we have their depositions in the record, I

18  think when you look at it especially in that light, with the

19  new law about how this circuit degrees with the First Circuit

20  decision --

21          THE COURT:  Why do you say it disagrees, they

22  weren't interpreting the same provision in the same context,

23  so why would you say disagrees?

24          MR. VERVENIOTIS:  That is correct, what you said is

25  correct.  But the same word "construction," which the First

4

1    Department found to be vague and therefore nonenforceable was

2    the essence of their decision.  The Second Department has said

3    in New York construction is not vague.  You know what a

4    contractor is, you know what construction is and you're going

5    to give it the plain meaning interpretation.

6              THE COURT:  I'm sorry, I've lost you.  I thought you

7    were talking about the Second Circuit's decision in *American*

8    *Empire*.  I thought you --

9              MR. VERVENIOTIS:  Yes, yes.  In the Second Circuit

10   decision that I quoted --

11             THE COURT:  They say "contractor" isn't vague.

12             MR. VERVENIOTIS:  Yes, contractor.

13             MR. FINI:  You said construction.

14             MR. VERVENIOTIS:  I'm sorry.  I think it's analogous

15   to the concept because the construction exclusion, especially

16   the L500 one that was at issue in the *Benchmark* case and is

17   the other exclusion that I sought to enforce, Your Honor's

18   reasoning is that following *Benchmark* because contractor, the

19   word that that operates there, is vague and unenforceable says

20   *Benchmark*, the First Circuit, we're not going to apply that

21   exclusion here.

22             What I'm saying to you is the Second Circuit, by

23   this decision, said contractor is not a vague word.  The

24   concept of interpreting insurance policies --

25             THE COURT:  No, I decided it was vague.

1          MR. VERVENIOTIS:  You followed the *Benchmark*

2     principles, which is --

3          THE COURT:  Yes, I did.

4          MR. VERVENIOTIS:  -- what the essence of *Benchmark*

5     is.  I have a copy, Your Honor, if you want me to hand it up.

6          THE COURT:  No, that's all right.

7          I think what I found was any contractor didn't mean

8     any contractor in the world, the fact that somebody worked for

9     but --

10         MR. VERVENIOTIS:  But what the second --

11         THE COURT:  -- it said contractor, the insured, as I

12    remember it added that language as well.

13         In any event, was there anything else you wanted to

14    say?

15         MR. VERVENIOTIS:  Yes.  Beyond that, the Second

16    Circuit reiterated in that case that the law in New York is

17    apply the plain meaning and for the Court to interpret the

18    policy provisions as a matter of law, not a jury trial or any

19    trial.

20         And in this context I think when you go back to the

21    word "renovation," because it is a separate word in that other

22    exclusion which says, yes, construction services, demolition,

23    renovation, renovation must be given a different meaning.

24    Renovation means to renovate, to make something new, to look

25    good.  A plain meaning interpretation here is that when the

1    evidence is undisputed that if they were scraping --

2              THE COURT:  So if I decided to paint my kitchen at

3    home I would be renovating my kitchen?

4              MR. VERVENIOTIS:  Yes, in a way you're renovating,

5    but even more so in this particular case --

6              THE COURT:  No, you have to understand I'd be

7    charged a lot more if I was renovating, believe me.

8              MR. VERVENIOTIS:  In this case they were actually

9    scraping, I guess, the old paint and/or what condition was

10   there in order --

11             THE COURT:  Any time anybody paints something --

12   they repaint something they do some scraping?

13             MR. VERVENIOTIS:  Well, maybe some, but having done

14   a lot of painting usually you don't scrape.

15             Here, in this case, it's even more --

16             THE COURT:  If you're doing a bad job you don't

17   scrape, but if you're doing a good job...

18             MR. VERVENIOTIS:  You've been speaking to my wife

19   about it.

20             THE COURT:  Yes.

21             MR. VERVENIOTIS:  In this case where they are doing

22   the scraping, they clearly are renovating and changing the

23   existing condition.  They're removing whatever is there,

24   they're fixing it and then they're painting it.  This is

25   renovation.  Giving a plain meaning, not a strained

1    interpretation, I think it's appropriate for Your Honor to

2    revisit that and issue a ruling saying based upon the record

3    here, this is renovation, what they were doing.

4         THE COURT:  All right.  Let me hear from your

5    adversary.

6         MR. EAGLE:  Sure, Your Honor, thank you.  I guess

7    the bottom line here is that we requested the motion be denied

8    because all we're hearing is rehashing of old arguments that

9    have already been made and rejected and shifting and new

10   arguments, none of which are supportive.

11        And I guess the prevailing, overriding concept is

12   that an insurance company loses unless it can show that its

13   exclusion is subject to no other interpretation.  If there is

14   two reasonable interpretations, they lose.  It has to be clear

15   and unmistakable.  And the construction-related exclusion Your

16   Honor fully addressed and decided the issues on page 33 and 32

17   of its decision and found a question of fact that it applies

18   but only if the scraping and painting was part of a larger

19   project of installing the insulation and the sheetrock because

20   then, quote, his activities constituted construction,

21   construction services, renovation or site preparation, and the

22   exclusion applies.

23        I think it's really important, if you'll just

24   indulge me for a second, to take you through a background of

25   the briefing to show how these things were already addressed

1 multiple times, or now we're hearing new arguments, none of

2 which is proper on motion for reconsideration.

3          USLI makes their original motion for summary

4 judgment, they don't say that painting is renovation.  They

5 know it's a stretch.  They know that that's not the only

6 reasonable interpretation.  You have to remember what's going

7 on here, we submitted an affidavit from the folks at WT and

8 Wong Tung who actually hired this work, and it's at 79-31,

9 Louis Wu, what he submitted the affidavit and said, I hired

10 Sheng Qiang Lin, it was two separate jobs.  The first being

11 the insulation work to make the second floor of the premises

12 warmer, and the second being routine painting work as a

13 cleanup.  It was not part of the insulation work.  The

14 insulation -- the painting work was performed on the first

15 floor of the premises to certain poles, beams in order to make

16 them look cleaner.  The painting was ordinary maintenance, not

17 construction or renovation.

18          You have to remember, you have a warehouse here, a

19 seafood warehouse, you've got open poles and beams.  And so

20 Louis Wu hires someone to go deal with this project because

21 there's an -- upstairs is getting cold, it's cold, it's a

22 warehouse, there's freezers, so do this project for me, this

23 insulation and sheetrock project, and then separate and apart

24 from that, oh, by the way, that looks dirty, can you clean it

25 up for me.  It's not renovation.

1          I won't burden Your Honor with going through the

2     dictionary definition of renovation and the like.

3          THE COURT:  Why don't you address the other argument

4     that -- I mean I suppose it's not improper for counsel to

5     point out a new case --

6          MR. EAGLE:  Of course not, Your Honor.

7          THE COURT:  -- and raise that and that's what

8     they've done, so why don't you explain why that case isn't

9     applicable.

10          MR. EAGLE:  I'll try not to pontificate too much.

11          THE COURT:  That's always good.

12          MR. EAGLE:  I can't believe they moved for

13     reconsideration based on this case.  I mean --

14          THE COURT:  Okay, now you don't believe it, tell me

15     why you don't believe it.

16          MR. EAGLE:  Fair enough.

17          THE COURT:  Okay.

18          MR. EAGLE:  Your Honor, the *American Empire* decision

19     doesn't change anything.  It involved different facts,

20     different policy language and is wholeheartedly consistent

21     with not only the New York appellate cases that we cited and

22     Your Honor relied upon, but the *Benchmark* decision from the

23     First Circuit and this Court's ruling that USLI's exclusion,

24     because it's a different exclusion, is not applicable here.

25     And what did the exclusion say USLI's exclusion said, because

*GEORGETTE K. BETTS, RPR, FCRR, CCR*
*Official Court Reporter*

1  Your Honor alluded to how it was applying to the insured's

2  contractors.  It said bodily injury to, quote -- and I'll use

3  the operative language, any employee of any contractor

4  performing services for which the insured may become liable.

5  And so the New York appellate cases that we cited, the

6  *Benchmark* case and this Court said it applies where the

7  insured's contractor has an employee who is injured, not like

8  here where Your Honor found as a matter of law, and it's not

9  being disputed on reconsideration, the injured claimant was

10  not working for or doing any work for the insured.

11       You'll recall that what happened was this work was

12  being done for W&T and Wong Tung in this warehouse, right, and

13  WW, the insured who is being sued, was the forklift operator

14  who just inadvertently rode the forklift into the worker.  It

15  wasn't his worker, it wasn't his construction.

16       *American Empire*, different policy language and

17  didn't even address whether a construction exclusion applies

18  where it's not the insured's contractor.  The exclusion was

19  for bodily injury sustained by any contractor or any of their

20  employees.  Guess what?  In that case the insured hired the

21  contractor and the bodily injury was to an employee of the

22  insured's contractor and the insured got sued because of that.

23  The sole issue in that case is -- it has nothing to do with

24  this case.  The sole issue in that case was whether the words

25  "any contractor" in the exclusion in that case, which was a

*GEORGETTE K. BETTS, RPR, FCRR, CCR*
*Official Court Reporter*

1    different exclusion, included the contractor at issue because

2    in the policy it defined the word contractor as that

3    contractor.  So ABC contractor is defined -- in the definition

4    of contractor it says ABC contractor.  The ABC contractor was

5    the one at issue, so the other side argued, oh, it can't be

6    part of any contractor so the Court said really?  Any

7    contractor includes the contractor that you define.  That's

8    it.  It didn't address the same language with the qualifier

9    that it has to be services for which the insured may be liable

10   and didn't involve the same situation as here where they're

11   trying to apply the exclusion in a situation where it wasn't

12   the insured's contractor.

13          And for that reason this Court relied upon New York

14   appellate cases, the *Merchants* decision from the Second

15   Department, the *U.S. Underwriters* decision from the Southern

16   District that was affirmed by the Second Circuit, and the

17   *Benchmark* court which addressed the language here under the

18   same circumstances and found that the exclusion doesn't apply

19   as a matter of law.  So, the devil's in the details.

20          THE COURT:  All right, thank you.

21          MR. FINI:  Your Honor.

22          THE COURT:  I'm going to not -- I'm sorry.

23          MR. FINI:  Okay.

24          THE COURT:  Is there something you would say

25   different from...

1            MR. FINI:  Your Honor, I just wanted point out one

2   thing, that in the *Benchmark* decision at pages 121 to 122, the

3   Court made very clear *Benchmark* could not have been liable for

4   Bailey's Decorative Painting -- it actually involved

5   decorative painting, ironically, and Mr. Eagle pointed out it

6   seized on the language for which it could become liable, which

7   means we're not just looking at the word contractor in

8   isolation.  I just wanted to point that out.

9            THE COURT:  Yes, I'm going to deny the motion for

10  reconsideration.

11           I have the pretrial order that's been submitted.  Is

12  there any reason we just can't go over that now and set a

13  date?  How long do the parties really think this is going to

14  take?

15           MR. EAGLE:  Your Honor --

16           THE COURT:  A day?

17           MR. EAGLE:  To give you a heads up, the trial

18  counsel that will be handling it from my office isn't present.

19  I could try to do the best I can, but I want to give you the

20  heads up in that regard.

21           THE COURT:  Well, are you familiar with the pretrial

22  order?

23           MR. EAGLE:  Yes, somewhat.  I apologize, I didn't

24  realize that was going to be a topic.

25           THE COURT:  I just thought since we were all here.

1          MR. EAGLE:  I appreciate that.  We can have a

2    conference call if you'd like with him.

3          THE COURT:  Pardon me?

4          MR. EAGLE:  A conference call with him if you'd like

5    or whatever.

6          THE COURT:  A conference call you said?  You mean

7    you can get him on the phone?

8          MR. EAGLE:  I don't think I can get him right now or

9    tomorrow maybe.  I just didn't want to speak out of school.

10          THE COURT:  Where are the objections?

11          Am I correct that under -- I was trying to go over

12    this to find objections.  The way the parties did this, I must

13    say it is -- all of your objections are in footnotes which is

14    not particularly helpful.

15          There are two witnesses, Carol Ann Myrtetus and

16    Karen Gorski that they object to and that's because you

17    believe that they're trying to give testimony about what the

18    law says.

19          MR. EAGLE:  Yes, Your Honor.  I believe that the

20    main bases for that objection is that at this point, based on

21    Your Honor's ruling, there is a very defined issue now for the

22    Court to rule upon and, that is, whether the painting that was

23    being done by Mr. Lin was separate from the

24    sheetrock/insulation project.

25          THE COURT:  Right.

1          MR. EAGLE:  If it's separate, there's no coverage.

2    If it's not, then I believe Your Honor has concluded that

3    there is coverage.

4          Those were insurance company witnesses that are -- I

5    believe one of them was an underwriter, one of them was a

6    claims person.  Those issues are done.  I mean we've already

7    dealt with rescission, we've already dealt with the legal

8    meanings to the provisions, it's factual now.  At this point

9    to have insurance witnesses --

10         THE COURT:  What are they necessary for?  The one

11   issue that was really identified, I think the rest of the

12   issues have been resolved, right?  Why do we need those two

13   witnesses?

14         MR. VERVENIOTIS:  Both would testify as to the

15   application of the exclusion in the context of these facts.

16   Your Honor found a triable issue of fact on the application of

17   the wording of the exclusion to these facts and they would

18   testify --

19         THE COURT:  No, I found a disputed fact over what

20   the guy was doing, whether it was -- factually, he was on his

21   own doing something or whether it was part of a larger

22   project, finding that if he was on his own it's not covered.

23   If it was part of a larger project, construction project --

24   what do either of one of those witnesses have to add to that

25   issue?

1          MR. VERVENIOTIS:  As I say, in addition to giving

2    their testimony as to how the policy wording interacts with

3    the facts of this case --

4          THE COURT:  What would they say?

5          MR. VERVENIOTIS:  They would say that under these

6    facts this exclusion doesn't cover these --

7          THE COURT:  Under which facts?

8          MR. VERVENIOTIS:  The facts as developed at trial.

9    The facts --

10          MR. FINI:  Your Honor, that's a legal determination

11    for Your Honor.  That's a legal determination.  That's not --

12    that fact witness wouldn't be giving anything other than a

13    legal opinion.

14          THE COURT:  Yes, it's sounds like it to me.

15          MR. VERVENIOTIS:  The facts have to be established

16    at trial, Your Honor.

17          THE COURT:  Right.

18          MR. VERVENIOTIS:  They would testify what the facts

19    are established at trial mean in the context of this

20    exclusion.

21          MR. EAGLE:  Your Honor, it looks -- by introducing

22    the word "mean" I think it's clear what the effort is, is to

23    start interpreting the exclusions again.  Your Honor has

24    already applied the exclusions and interpreted them and

25    basically said we've got one factual issue left that has

1   nothing really to do with interpretation at this point.  It's

2   factual, is it painting separate from the separate

3   construction project.  One party wins if it is, and one party

4   wins if it isn't.

5          THE COURT:  All right.  I think so too.  I don't

6   understand why those witnesses are relevant to the issue

7   that's been identified.

8          What about all the exhibits?  You objected all of

9   the exhibits of plaintiff?

10         MR. EAGLE:  That I'm not as well versed on and I

11  don't have it in front of me, Your Honor.

12         I mean, if you think about it -- and I don't know

13  what exactly these exhibits were and we'll be happy to dust

14  them off and see if there's room for us to get back -- to

15  reach some agreements, some mutual agreements with respect to

16  exhibits, but in terms of whether it's -- the painting was

17  part of a larger insulation/sheetrock project, I doubt there's

18  many exhibits that go to that issue.

19         MR. VERVENIOTIS:  Your Honor --

20         THE COURT:  Here's an example of just why it's not

21  helpful to the Court for people to make blanket objections.

22  It says in the footnote, defendants WW, WT and Wong Tung

23  object to all of plaintiff's proposed exhibits.  One of those

24  proposed exhibits is 24, photographs of premises and accident

25  location.  Exhibit A from defendants is photographs of

1  premises and accident location.

2          MR. FINI:  Your Honor, if I may.  One of the things

3  that would have to be done is deposition designation by line.

4  Because we were trying to get this in on time and the

5  plaintiff has listed all the deposition transcripts in whole,

6  we haven't gotten down to the nitty-gritty, which we would

7  have to do before trial of line designations, so that's, I

8  think, the main driver here.  I mean obviously --

9          THE COURT:  It doesn't have anything to do with what

10 I just raised though, which is an exhibit of photographs of

11 premises and accident location.

12         MR. FINI:  Right.  And some of those photographs may

13 not have -- they may have been taken afterwards.  I was at a

14 cite inspection where the plaintiff took photographs after the

15 accident and so those photographs would be objected to as not

16 contemporaneous.

17         THE COURT:  All right.  I want the two of you to go

18 over this again and do this right because this isn't helpful.

19         MR. VERVENIOTIS:  May I, Your Honor?  Some of the

20 evidence that I'm going to be putting in I need my witnesses

21 in order to do that.  For example, Carol Ann Myrtetus received

22 a letter, had telephone discussions with somebody on their

23 behalf when they reported the claim.  They exchanged emails

24 and letters about what happened.

25         If I don't have any witnesses -- Your Honor is

1   saying I'm going to conduct a trial in which I have no

2   witnesses.

3          THE COURT:  Well, that's not what --

4          MR. VERVENIOTIS:  How am I going to get my evidence

5   in?

6          THE COURT:  But that's not what you say the

7   witnesses are going to say.  Well, you say --

8          MR. EAGLE:  Your Honor, every insurance --

9          MR. VERVENIOTIS:  The general context is what she's

10  handling of the claim and the communications that she's had

11  and her -- and the documents that are relevant to these

12  exclusions.

13         MR. EAGLE:  This is just a shifting argument, Your

14  Honor.  Those witnesses have no personal knowledge with

15  respect to the facts of what went down.  They were sitting in

16  an insurance office in different states and the witnesses who

17  were involved with the work will be here to testify as to what

18  happened.

19         THE COURT:  What I'd like you to do is if you think

20  that either of these witnesses have something to say

21  substantively with regard to the issue that the Court has

22  identified, explain what that is.  I don't know why their

23  decision to disclaim coverage is an issue or decision to

24  defend or the application and construction of the exclusion, I

25  don't know why any of that's relevant, but if there is

1    something that you think that she has that's relevant to the

2    issue, like if somebody called up and told her something

3    different about was going on at the premises, then it could be

4    a statement of a party or something, I don't know, but just

5    that discussion of it is not helpful.  It sounds like none of

6    it is relevant.  I can't tell you that some things she might

7    say might not be relevant, but tell me a little bit more about

8    it in the context of a pretrial order.

9              MR. VERVENIOTIS:  I gladly will amend it, but that's

10   what I meant by the first clause.  The receipt of notice as to

11   the underlying action.  She's the one who had communication,

12   notwithstanding counsel's comments, the record is replete with

13   emails and letters and there was a telephone conversation that

14   she has in her notes, all of this is stuff that I can't put

15   into evidence if I don't have the person who had these

16   communications.  And --

17             THE COURT:  These communications are about what

18   though?

19             MR. VERVENIOTIS:  About the accident, reporting the

20   accident.  This is what happened.  This is the guy who was

21   involved in the accident.  Emailing letters back and forth.

22             THE COURT:  Isn't all of that sort of agreed to and

23   undisputed?

24             MR. VERVENIOTIS:  Apparently not.

25             MR. EAGLE:  What was reported is that somebody got

1    hit on a ladder while he was painting, okay.

2           THE COURT:  A lot of this has been essentially not

3    in dispute.  The issue that I have suggested that's in

4    dispute, what would she say about that?  If somebody called

5    her up and said, this guy was there as part of the entire

6    renovation project or, you know, they said something like that

7    to her, that might be relevant but I'm not sure what else

8    would be relevant.

9           MR. VERVENIOTIS:  Well, I'm not her, Judge, so I

10   don't know exactly what she's going to testify.  I'll gladly

11   go back to her and detail for you exactly what she would

12   testify, but to the point of things not being in dispute, I

13   agree, that's what I said earlier.  I think nothing is in

14   dispute here.  We have everybody's deposition testimony and

15   all the documents about what occurred.

16          What she would testify is, once -- Your Honor has

17   said the motion is now out the window, that is not evidence.

18   So people are going to march in this courtroom and testify

19   about the facts.  The facts are going to be what people

20   testify in this courtroom, not what has previously been

21   submitted in depositions, not what has previously been

22   submitted in motion papers.  I want to put --

23          THE COURT:  They can -- if someone is a party and

24   admissible evidence at a trial might be what someone said in a

25   deposition.

GEORGETTE K. BETTS, RPR, FCRR, CCR
*Official Court Reporter*

1          MR. VERVENIOTIS:  Yes, to cross examine them maybe,

2     yes.

3          THE COURT:  No, not just -- more than that, if they

4     are a party it would be a statement of a party opponent.

5          MR. VERVENIOTIS:  I agree, but my point is somebody

6     could take the witness and testify of some additional fact or

7     a different issue that my client could testify about how that

8     fact impacts how the policy applies in this case.  The

9     facts -- if Your Honor is going to have a trial in this case,

10    we can't say the facts have been established.  If you're going

11    to have a trial in this case people come in to testify --

12         THE COURT:  To the extent that I said on summary

13    judgment that this issue has been resolved because that issue

14    has been resolved.  If I determine that on summary judgment

15    that there was no disputed -- genuinely disputed issue of fact

16    on a given point, that has been resolved.  We're not going to

17    redo the summary judgment motion to the extent that I've made

18    the determinations there.  If something is left open by the

19    summary judgment motion, that's what we're here to resolve and

20    I've identified that issue, which is exactly what was this

21    fellow doing there that day.  And if she somehow has relevant

22    testimony to that, fine.  But because I'm having a trial on

23    that issue does not mean that the case is -- anything said in

24    the summary judgment motion is now no good, it's out the

25    window because we're going to have a trial on a given specific

1    issue.  So I'm not going to -- it's not right to say that if

2    something was resolved on summary judgment by the Court saying

3    there was no genuine materially disputed fact about this,

4    therefore I find X.  We're not redoing X at the trial.  So

5    that should be clear.

6            MR. VERVENIOTIS:  My point, Your Honor, and I'm glad

7    to try to rework it, is most of my evidence to which they

8    object if I don't have a witness to get them into evidence I

9    can't get my documents into evidence.

10           MR. FINI:  Your Honor, on the documents, the emails

11   and recording of the claim you would probably -- you would

12   probably expect us to stipulate.

13           THE COURT:  Well, that's what I'm saying, sit down

14   and talk to each other instead of talking to me about it for

15   the first time.  Okay.  Go over it, decide -- this is a joint

16   pretrial order, see what you can agree to, not agree to and

17   instead of just throwing in I disagree with everything.  So

18   redo the joint pretrial order.

19           And today is the 6th, correct?

20           MR. EAGLE:  Correct.

21           MR. VERVENIOTIS:  Yes, Your Honor.

22           THE COURT:  So submit a revised pretrial order by

23   March 8th.

24           MR. EAGLE:  Great, Your Honor.

25           MR. FINI:  Just to clarify, Your Honor, I don't mean

```
 1   to impose, would that include for depositions that the sides

 2   have to designate pages and lines?

 3            THE COURT:  Yes.

 4            MR. FINI:  Okay.

 5            MR. VERVENIOTIS:  Other than to impeach a witness,

 6   right, Your Honor?

 7            THE COURT:  Right.

 8            So I'll set this down for April 8th.  And about two

 9   days the parties think, max?

10            MR. FINI:  I would like to think if the witnesses

11   are streamlined, as Your Honor is suggesting, if we have a

12   half a day with an insurance person talking about the law,

13   then that eats up, we would need more than two days.  But if

14   we really streamline it, it would be conceivable two to three

15   days.

16            THE COURT:  Two to three.  How many witnesses are

17   relevant to what I --

18            MR. FINI:  The problem is it's going to take up time

19   because there are going to be interpreters that will slow

20   up -- substantially slow the testimony.

21            THE COURT:  You'll have Court-certified

22   interpreters, right?

23            MR. FINI:  Yes.  But that will eat up,

24   unfortunately, and I apologize, it will just by necessity the

25   person who is on the ladder will need an interpreter and so is
```

1   the person who drove the forklift.  That's why I think two

2   days is kind of --

3            THE COURT:  Well, I'll set it down for April 8th.

4   If we can't start I have a -- let's put it down April 8th at

5   10 o'clock.  I think we're done.  Thank you.

6            MR. EAGLE:  Thank you, Your Honor.

7            MR. FINI:  Thank you, Your Honor.

8            (Matter concluded.)

9

10                    *     *     *     *     *

11

12   I certify that the foregoing is a correct transcript from the
     record of proceedings in the above-entitled matter.

13

14   s/ Georgette K. Betts                February 8, 2019

15   GEORGETTE K. BETTS                   DATE

16

17

18

19

20

21

22

23

24

25